IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

**ERIC C. BURGIE**                                                                                     **PLAINTIFF**
**ADC #120956**

V.                          NO. 5:19-cv-00352-JM-ERE

**WENDY KELLEY,** *et al.*                                                                      **DEFENDANTS**

## RECOMMENDED DISPOSITION

### I.   Procedures for Filing Objections

This Recommendation has been sent to United States District Judge James M. Moody Jr. Any party may file written objections to all or part of this Recommendation. Any objections filed must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen days of the date of this Recommendation. If no objections are filed, Judge Moody may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, the parties may waive the right to appeal questions of fact.

### II.  Summary

Plaintiff Eric C. Burgie, currently an inmate at the East Arkansas Regional Unit (EARU) of the Arkansas Division of Correction (ADC), filed this 42 U.S.C. § 1983 action *pro se*, alleging that correctional officers violated his constitutional rights in various ways during his incarceration at the Varner Unit. Mr. Burgie now

proceeds through appointed counsel,[1] on his remaining claims[2] that: (1) Defendants Nyisha Barker-Walker and Kiana Jiles-Whittaker failed to protect him from an inmate attack; (2) Defendants Randy Watson, Tony McHan, Maurice Williams, and James Gibson were deliberately indifferent to his safety by failing to provide adequate security; and (3) Defendants McHan and Mark Cashion held him in administrative segregation in retaliation for filing a grievance. *Docs. 2, 5, 9, 20, 31, 32, 64, 65, 90,101,109,112, 134, 142*. Mr. Burgie sues each Defendant in his or her individual capacity only (*Doc. 2 at 2*), seeking compensatory and punitive damages, attorney's fees and costs, and unspecified equitable relief. *Doc. 2 at 26*.

On February 7, 2022, Defendants Cashion, Gibson, Jiles-Whittaker, McHan, Watson, and Williams (collectively, "ADC Defendants") filed a motion for summary judgment, statement of facts, and supporting brief. *Docs. 177, 178, 179*. Defendant Nyisha Barker-Walker did not join in the pending motion for summary judgment.[3] Mr. Burgie has filed a response in opposition and supporting brief. *Docs. 200, 201*.

---

[1] On May 28, 2021, the Court appointed counsel Lee Short to represent Mr. Burgie. *Doc. 149*.

[2] The Court previously dismissed all other claims. *Docs. 9, 20, 32, 64, 90, 101, 109, 112, 134, 142*.

[3] Defendant Barker-Walker no longer works for the ADC and is not represented by counsel. On June 10, 2020, she filed an answer denying any knowledge of the inmate attack underlying Mr. Burgie's claims. *Doc. 54*. Beginning August 24, 2020, mail to Defendant Barker-Walker has been returned to the Court as undeliverable. *Docs. 88, 91-95, 98-100, 107, 165, 166*.

For the reasons explained below, the motion for summary judgment should be GRANTED, and all claims against the ADC Defendants should be DISMISSED, with prejudice. In addition, the Court recommends that Mr. Burgie's claim against Defendant Barker-Walker, be DISMISSED, with prejudice.

## III.   Standard of Review

Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. See Fed. R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

## IV.   Factual Background[4]

On November 6, 2016, Mr. Burgie was housed in the general population of barracks 5 in the ADC's Varner Unit. *Doc. 65 at 2*. At approximately 2 or 3 p.m., a

---

[4] The facts are primarily taken from Mr. Burgie's deposition testimony. *Doc. 177-7*.

dispute arose between two inmates over a football bet. *Doc. 177-7 at 3, 5*. At the time, ADC staffing requirements called for a single correctional officer to safeguard and secure barracks 5 and 6 (*Doc. 177-4 at 2*; *Doc. 177-5 at 4*; *Doc. 177-6 at 2*), and officer Keontis Walker (not a named Defendant) was assigned to that post. *Doc. 177-7 at 5*. Officer Walker observed the dispute in barracks 5 and commenced to call security, but he stopped when inmates assured him: "[No, man[;] they're straight[;] we got it[;] it's all right." *Id.*

At 5:00 p.m., Defendant Jiles-Whittaker replaced officer at Walker at the barracks 5 and 6 post. *Id. at 5, 16*; *Doc. 177-13*. Contrary to inmates' earlier assurances to officer Walker, the dispute over a football bet persisted and had expanded to involve more inmates. *Doc. 2 at 7-8; Doc. 177-7 at 3-4*. Sometime between 5:30 p.m. and 6:15 p.m., Mr. Burgie attempted to separate the inmates who were still arguing, and in the midst of his peacekeeping efforts, an inmate struck him. *Doc. 177-7 at 3-4, 10*. Mr. Burgie attempted to defend himself, at which point, eleven to twelve inmates jumped on him and hit him with a lock or a boot. *Id. at 4, 13*. This blow caused Mr. Burgie to lose his balance, hit his head on a bed rack and fall to the floor, where he briefly lost consciousness. *Id.* In deposition, Mr. Burgie could not recall the precise amount of time that passed from the moment he received

4

the initial blow until he lost consciousness.[5] *Id. at 12, 15*. He was only certain that "[i]t happened fast." *Id. at 15*.

The physical altercation involving Mr. Burgie occurred on the ground floor of barracks 5. *Id. at 10*. After Mr. Burgie regained consciousness, he attempted to retrieve a weapon from his bed rack on the upper level of barracks 5, but inmates convinced him that he needed medical attention for profuse bleeding from "a hole" in his head. *Id. at 4, 13*. At that time, Defendants Jiles-Whittaker and Barker-Walker stood in an observation hallway on the upper level of the barracks, enclosed by a glass partition with a door. *Id. at 4, 10-14*. Inmates, seeking medical help for Mr. Burgie, banged on the door. *Id.* Defendant Jiles-Whittaker opened the door and called for officers to transport Mr. Burgie to the infirmary, where he told a nurse that he had fallen. *Id. at 4*. Mr. Burgie was subsequently transported to a hospital, where he received 17 surgical staples for head and ear wounds. *Doc. 177-7 at 5; Doc. 177-10 at 4*. Upon Mr. Burgie's return to the ADC that night, he was placed in lock down in Varner SuperMax. *Doc. 177-7 at 4-5*.

---

[5] Initially, when asked how long the incident lasted, Mr. Burgie responded, "I can't say how long, but it wasn't really long. It happened fast." *Doc. 177-7 at 11-12*. When asked the question again, Mr. Burgie reiterated that he didn't know how long, explaining, "I can't tell you. All I know is that dude blindsided me, and we got to fighting. Before I knew it, I got multiple inmates jumping on me and hitting with boots and locks. It may have been 10 minutes, it may have been 15 minutes, it may have been 20 minutes. I can't tell you. I don't know." *Doc. 177 at 15*.

The next day, Defendant Williams and former Defendant Johnson asked Mr. Burgie what had happened the night before. *Id. at 5*. Wanting to avoid being labeled a snitch by other inmates, Mr. Burgie replied that he had slipped and fallen. *Id.* In response to further questioning, Mr. Burgie stated that if the officers wanted to know what happened, they could ask Defendants Jiles-Whittaker and Barker-Walker, who had witnessed the incident. *Id. at 4-6.*

Approximately 45 days later, with his wounds healed and staples removed, Mr. Burgie requested release to the general population. *Id. at 8.* During a classification hearing, Defendants McHan and Cashion declined to release Mr. Burgie from administrative segregation for the stated reason that he refused to identify his attacker. *Doc. 177-7 at 9, 17*.

Mr. Burgie remained in administrative segregation until he was transferred to the EARU on March 13, 2017. *Doc. 177-1 at 3; Doc. 177-7 at 9*.

V. **Discussion**

Each ADC Defendant asserts qualified immunity and seeks summary judgment in his or her favor. Qualified immunity protects government officials from personal liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

6

Qualified immunity is a question of law. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). To overcome the defense at the summary judgment stage, a plaintiff show: "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; *and* (2) the right was clearly established at the time of the deprivation." *Howard v. Kansas City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." [Pearson v. Callahan, 555U.S. 223, 129 (2009)](#).

For reasons that follow, each ADC Defendant is entitled to qualified immunity under the first prong of the analysis because the facts, viewed in a light most favorable to Mr. Burgie, fail to demonstrate the violation of a constitutional right.

   **1.   Failure to Protect Claim from a Specific Inmate Attack**

A correctional official "violates the Eighth Amendment if he is deliberately indifferent to the need to protect an inmate from a substantial risk of serious harm from other inmates." *Jackson v. Everett*, 140 F.3d 1149, 1151 (8th Cir. 1998). "A failure-to-protect claim has an objective component, whether there was a substantial risk of harm to the inmate, and a subjective component, whether the prison official

was deliberately indifferent to that risk." *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000). To be liable, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

      a.      Defendant Jiles-Whittaker

Mr. Burgie alleges that Defendant Jiles-Whittaker failed to protect him from violence at the hands of other inmates on November 6, 2016 because she: (1) witnessed inmates attacking him and did nothing to stop it (*Doc. 201, at 2*); and (2) failed to remain stationed at the control booth, where she could have radioed for help. *Doc. 177-7 at 16*.

In response to interrogatories, Defendant Jiles-Whittaker acknowledged that she was present in present in barracks 5 when Mr. Burgie told her he had fallen and needed medical attention, but she did not recall what had occurred in the barracks before he requested medical attention. *Doc. 177-3 at 3*. Mr. Burgie admits that he did not see Defendants Jiles-Whittaker or Barker-Walker until *after* he was attacked. *Doc. 177-7 at 18*. But in deposition, he recalled that when he told Defendant Jiles-Whittaker he had fallen, she said, "[W]e already seen y'all up in there fighting." *Doc. 117-7 at 14*.

8

Even if Defendants Jiles-Whittaker and Barker-Walker witnessed Mr. Burgie's attack from the glass-enclosed hallway on the upper level of barracks 5, the undisputed facts show that they had no constitutional duty to intervene. First, Mr. Burgie's acknowledgement that the entire incident "happened fast," indicates that the officers lacked opportunity to intervene. Second, the Eighth Circuit has held that "prison guards are not constitutionally required to intervene in violent fights between inmates when the inmates outnumber guards" or when "intervention would place the guards in danger of physical harm." *Prosser v. Ross*, 70 F.3d 1005, 1008 (8th Cir. 1995) (citing *Arnold v. Jones,* 891 F.2d 1370, 1373 (8th Cir.1989)). Here, Mr. Burgie's deposition testimony confirms that the inmate attack involved multiple inmates, at least one of whom was armed with a lock or a boot.

The Eighth Circuit has recognized that prison officials are entitled to qualified immunity when an inmate is attacked by surprise. See *Schoelch v. Mitchell*, 625 F.3d 1041, 1047-49 (8th Cir. 2010); *Tucker v. Evans*, 276 F.3d 999, 1001 (8th Cir. 2002); *Prosser v. Ross*, 70 F.3d 1005, 1007 (8th Cir. 1995); *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990). "[B]ecause prisons are dangerous places, 'housing the most aggressive among us and placing violent people in close quarters,' . . . 'prison officials are entitled to qualified immunity from claims arising out of a surprise

9

attack by one inmate on another.'" *Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998) (internal citations omitted).

Here, Mr. Burgie concedes that: (1) he was "cool" with all the inmates involved in the underlying incident before the attack occurred; (2) the inmates had assured officer Walker that everyone was "straight"; and (3) he did not have any inmates on an enemy alert list prior to the incident.[6] Mr. Burgie fails to present any evidence that Defendants Jiles-Whittaker or Baker-Walker had reason to know that he faced a substantial risk of serious harm *before* the attack occurred. Nor is there evidence that the officers drew any such inference or disregarded a serious risk of harm to Mr. Burgie before the attack began. No one, not even Mr. Burgie, expected this attack to occur. There is no question that this was a surprise attack.

Finally, assuming that Defendants Jiles-Whittaker and Baker-Walker were absent from the control booth when Mr. Burgie was attacked, such conduct is, at most, negligence. *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018) (stating that correctional officer's absence or inattentiveness during attack "represents – at most – gross negligence, which falls short of deliberate indifference as a matter of law").

---

[6] In deposition, Mr. Burgie testified that prior to the November 6 incident, he had no entries on his enemy alert list. *Doc. 177-7 at 6*. In addition, he testified that, prior to the attack, he never told anyone that he felt unsafe or in danger. *Id*. *at 6-7*. He only provided vague testimony that attacks were occurring regularly at the Varner Unit, and "people" were worried about their safety. *Id*. *at 16*.

10

In deposition, Mr. Burgie complained that if the officers had been present in the control booth, they could have radioed for help and prevented the attack. *Doc. 117-7 at 16.* But this argument is completely at odds with Mr. Burgie's testimony that the attack was unexpected and "happened fast." Viewing the facts in a light most favorable to Mr. Burgie, Defendant Jiles-Whittaker is entitled to qualified immunity, and the failure-to-protect claim against her should be dismissed, with prejudice.

    b. Defendant Barker-Walker

There is a strong judicial preference for adjudication on the merits. *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 784 (8th Cir. 1998) (citation omitted). In addition, "[w]hen co-defendants are similarly situated, inconsistent judgments will result if one defendant defends and prevails on the merits and the other suffers a default judgment." *Angelo Iafrate Const., LLC v. Potashnick Const., Inc.*, 370 F.3d 715, 722 (8th Cir. 2004) (citing *Frow v. De La Vega,* 82 U.S. 552, 554 (1872)). "This principle is designed to avoid inconsistent verdicts, as it would be incongruous and unfair to allow a plaintiff to prevail against defaulting defendants on a legal theory that was rejected with regard to answering defendants in the same action." *Edwards v. Dwyer*, No. 1:06-cv-1, 2008 WL 222514, at *1 (E.D. Mo. Jan. 25, 2008) (citing *Angelo Iafrate Constr.,* 370 F.3d at 722)). "To avoid such inconsistent results, a

judgment on the merits for the answering party should accrue to the benefit of the defaulting party." *Angelo Iafrate Constr.,* 370 F.3d at 722.

Mr. Burgie's failure-to-protect claims against Defendants Jiles-Whittaker and Barker-Walker depend on identical allegations and evidence, warranting the same resolution. Although Defendant Barker-Walker did not join the ADC Defendants' motion, Mr. Burgie received ample opportunity to address Defendant Jiles-Whittaker's assertion of qualified immunity on the basis of a surprise inmate attack. Given the identical nature of Mr. Burgie's claims against Defendants Jiles-Whittaker and Barker-Walker, the Court should enter summary judgment *sua sponte* in favor of Defendant Barker-Walker and dismiss the claim against her, with prejudice. *Global Petromarine v. G.T. Sales & Mfg., Inc.,* 577 F.3d 839, 844 (8th Cir.2009) ("[A] determination of summary judgment *sua sponte* in favor of the prevailing party is appropriate so long as the losing party has notice and an opportunity to respond.").

### 2. Failure to Protect on the Basis of Inadequate Security

Mr. Burgie contends that Defendants Watson, McHan, Williams, and Gibson failed to take measures to ensure adequate security in his barracks, such as installing video cameras and staffing additional correctional officers. *Doc. 2 at 16*.

The Eighth Amendment requires prison officials to "provide humane conditions on confinement," which includes tak[ing] reasonable measures to

guarantee the safety of inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Under the deliberate indifference standard, Mr. Burgie must show that: (1) objectively, he was incarcerated under "conditions posing a substantial risk of serious harm;" and (2) subjectively, the defendant prison officials were "deliberately indifferent" to that risk. *Id.* at 834.

"[A]n obvious risk of harm may justify an inference that prison officials subjectively disregarded that risk." *Patterson v. Kelley*, 902 F.3d 845, 852 (C\8th Cir. 2018) (citing *Farmer*, 511 U.S. at 842). If a plaintiff "presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk." *Farmer*, 511 U.S. at 842.

For example, in *Krein v. Norris*, 309 F.3d 487 (8th Cir. 2002), the Eighth Circuit held that the record supported an Eighth Amendment claim based on the "substantiated" allegation that ADC officials failed to provide adequate security in barracks #1 at the North Central Unit ("NCU"). In opposition to the defendants' assertion of qualified immunity, the plaintiff, a victim of a surprise inmate attack,

13

presented the affidavits of multiple inmates, an NCU security officer, and a prison security expert, showing that:

> [1]defendants' failure to abide by staffing requirements created an environment which posed a risk of harm to all inmates housed in the barracks area; [2] the NCU had one guard for three barracks housing 150 inmates; [3] defendants were or should have been aware of an inadequate staffing problem as early as August 1997 and yet they had made no staffing changes as of January 1998, when the attack [at issue] occurred; [4] the level of violence in Barracks # 1 was five times that of any other NCU barracks and yet staffing adjustments were not made to address the disparity; [5] the number of isolation cells was inadequate; and [6] ADC failed to keep track of the number and locations of assaults occurring within the NCU.

*Krein*, 309 F.3d 489–90.

Here, Mr. Burgie's *only* evidence that the conditions in barracks 5 presented a substantial risk of harm to inmate safety is his own, September 2021 testimony that inmate attacks were happening "on the regular" and that a week before, an inmate had been attacked. *Doc. 177-7 at 16*. Mr. Burgie contends that Defendants Watson, McHan, Williams, and Gibson failed to protect inmates by providing "sufficient staff members on post" and "ensuring that . . . officer[s] stay[ed] on their post and [did] their job." *Id*. In addition, he complained that "they could've had cameras in the barracks." *Id*

It is undisputed that at the time of Mr. Burgie's attack, the assignment of one correctional officer in barracks 5 and 6 complied with ADC staffing policy. Mr.

Burgie presents no evidence that this staffing practice or ADC policy created a substantial risk of harm to inmates.

In addition, a reasonable factfinder could not find, based on *one* officer's failure to occupy her post on *one* occasion, that officers were regularly leaving their posts, giving rise to a pervasive risk of harm to inmates. In fact, Mr. Burgie acknowledges that when football bet quarrel between two inmates first began, officer Walker was present at his post.

Finally, Mr. Burgie suggests but provides *no* evidence that the absence of security cameras in his barracks created a pervasive risk of harm, and he fails to cite a single incident where the presence of a camera would have averted harm to an inmate.

Mr. Burgie has failed to come forward with evidence, other than his own conclusory testimony, that he was incarcerated under conditions that posed a substantial risk of serious harm to inmates.[7] Even if Mr. Burgie's testimony satisfied the objective component of a failure-to-protect claim, which is not the case, he offers no evidence suggesting that any Defendant was subjectively aware of and deliberately indifferent to a substantial risk of serious harm to inmates based on

---

[7] In fac, Mr. Burgie asked to be released from protective custody, back to general population, *after* he was attacked. See *Berry v. Sherman*, 365 F.3d 631, 634 (8th Cir. 2004) (finding no substantial risk of harm because Plaintiff declined protective custody).

15

inadequate security. See *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018) (distinguishing *Krein* from a record lacking any evidence that defendants subjectively disregarded substantial risk of harm to inmate). Accordingly, Defendants Watson, McHan, Williams, and Gibson are also entitled to qualified immunity with respect Mr. Burgie's Eighth Amendment claim based on inadequate security.

### 3. Retaliation Claims against Defendants McHan and Cashion

Mr. Burgie alleges that Defendants McHan and Cashion retaliated against him for filing a grievance concerning the November 6, 2016 assault. He argues that the officers retained him in administrative segregation for "a significant and arguably unconscionably long period of time" until his transfer to the EARU on March 13, 2017. *Doc. 201 at 5*. To succeed with this claim, Mr. Burgie must show that: (1) he engaged in protected activity; (2) Defendants took adverse action against him "that would chill a person of ordinary firmness" from engaging in that activity; and (3) retaliation was the motivating factor for the adverse action. *In re Kemp*, 894 F.3d 900, 906 (8th Cir. 2018); *Lewis v. Jacks*, 486 F.3d 1026, 1028 (8th Cir. 2007). Mr. Burgie shoulders a "heavy evidentiary burden" to establish retaliation, and "[m]erely alleging that an act was retaliatory is insufficient." *Meuir v. Greene Cty. Jail Emps.*, 487 F.3d 1115, 1119 (8th Cir. 2007).

It is undisputed that Mr. Burgie was held in administrative segregation after the November 6, 2016 attack until March 13, 2017, the date he was transferred to EARU. Sometime in December 2016, Mr. Burgie requested release into the general population, and Defendants McHan and Cashion denied his request for the stated reason that he refused to disclose the names of inmates who attacked him. *Doc. 117-7 at 16-17*. Pursuant to ADC policy, inmates may be assigned to administrative segregation for their own safety or for the safety of others. *Doc. 177-9 at 2*. In sworn statements, Defendants McHan and Cashion explain that without the identities of Mr. Burgie's attackers, they could not return him to the general population without risking that he would be housed near his enemies. *Doc. 117-1 at 2; Doc. 117-2 at 3*. Defendants McHan and Cashion state that Mr. Burgie therefore remained in administrative segregation for his own safety, and the safety of others, until he could be transferred to another prison. *Doc. 117-1 at 2; Doc. 117-2 at 3*.

Mr. Burgie offers no evidence, other than his own speculation, that retaliation was the motivating factor for holding him in administrative segregation. See *Farver v. Schwartz*, 255 F.3d 473, 475 (8th Cir. 2001) (citing *Goff v. Burton*, 91 F.3d 1188, 1191 (8th Cir. 1996) (Plaintiff "must prove that a desire to retaliate was the actual motivating factor."). Accordingly, Defendants McHan and Cashion are entitled to qualified immunity as to Mr. Burgie's First Amendment retaliation claims.

17

## VI.     Conclusion

IT IS THEREFORE RECOMMENDED that:

1. ADC Defendants' motion for summary judgment (*Doc. 177*) be GRANTED, and Mr. Burgie's claims against ADC Defendants Jiles-Whittaker, Watson, McHan, Williams, Gibson, and Cashion be DISMISSED, with prejudice.

2. The Clerk is directed to update the name of Defendant Barker-Walker to Nyisha Barker-Walker. See *Doc. 177-1 at 3*.

3. Mr. Burgie's claims against Defendant Barker-Walker be DISMISSED, with prejudice.

4. The Clerk be instructed to close this case.

DATED this 3rd day of May, 2022.

_____
UNITED STATES MAGISTRATE JUDGE